# WERKSMAN JACKSON & QUINN LLP

888 West Sixth Street, Fourth Floor
Los Angeles, California 90017
telephone (213) 688-0460
facsimile (213) 624-1942
www.WerksmanJackson.com

MARK J. WERKSMAN
ALAN J. JACKSON
KELLY C. QUINN *
CALEB E. MASON **
ELIZABETH S. LITTLE
JACQUELINE M. SPARAGNA ***
NIA C. WAHL

* Certified Specialist — Appellate Law
The State Board of California
Board of Legal Specialization
** Admitted in California and Illinois
*** Admitted in California and Virginia

October 17, 2025

**BY ECF**
The Honorable Loretta A. Preska
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re: *United States v. Naason Joaquin Garcia, et al.,* SI 25 Cr. 370 (LAP)

Dear Judge Preska:

## I.     Introduction

On Friday, October 10, 2025, the Government filed a Motion to Enter a Proposed Protective Order ("PPO"), which includes unconstitutional restrictions on the constitutional rights of Defendant Naason Garcia ("Mr. García" or "Defendant") to participate in his own defense and to enjoy the effective representation of counsel. Mr. Garcia respectfully requests that the Court delete the phrase "or the content of the AEO Material" from Paragraph 9 of the Proposed Protective Order, and add to that paragraph the following sentence: "Nothing in this paragraph shall limit the right of defense counsel to discuss with defendants the contents or substance of any evidence in this case for the purpose of preparing the defense case."

## II.  Relevant Procedural History

Prior to the Government's filing, counsel for the parties met and conferred regarding the terms of the PPO. Declaration of Caleb Mason Par. 2. On September 23, 2025, Government counsel circulated a draft order, and stated that Government would "begin rolling discovery productions promptly after this order is entered." Declaration of Caleb Mason ("Mason Decl.") Ex. A. The draft PPO included a section referring to "Attorney's Eyes Only" ("AEO") materials, and providing that defense counsel would be precluded from discussing with their clients the contents of any materials so labelled by the Government. *See* ECF Doc. 30-1, at Par. 9. On September 25, 2025, Defense counsel responded and detailed his concerns with the nature and language of the proposed order. *Id*. at Par. 5.  Counsel's core concern was that the provision precluding

defense counsel from telling his client what evidence the Government is adducing against him would interfere with defense counsel's duty of effective representation, and the Defendants' rights to effective representation. Mason Decl. Ex. C.

The Government agreed that the proposed protective order would preclude defense counsel from discussing with his client any evidence labelled AEO, but refused to alter the language. Government counsel stated that such provisions are "standard language in the Southern District of New York," and that he believed this Court would enter the PPO as it was proposed, over the defense objections. Mason Decl. Ex. B, p.2 (9/25/25 AUSA Allison email). Government counsel stated: "If we do not have a true AEO provision provision in place, that will slow down your receipt of information." Mason Decl. Ex. C (10/3/25 AUSA Allison email).

Under the PPO the Government has submitted to the Court, the Government will be able to unilaterally prevent defense counsel from telling their clients what the evidence against them is, as to any evidence the Government labels AEO. Defense counsel would be forced to challenge individual designations seriatim and litigate each challenge before the Court in order to even discloser to their clients what the evidence contains. ECF Doc. No. 30-1, at Par. 12.

Government counsel stated to the Court, at Defendant's arraignment, that there are "multiple terrabytes" of discovery materials, including electronic files found on numerous devices, and stated that "a number of those devices contain child pornography." And the Government's motion asserts that there are "hundreds of photos and videos depicting child sexual abuse material." The accuracy of that statement is not relevant here. What matters here is that, per the Government's own assertions about the evidence, there is a significant likelihood (indeed a virtual certainty) that the Government will apply the AEO designation to a large number ("hundreds") of documents, videos, photos, and other materials, about which it will assert both that (a) these items are evidence that will be used against Defendant, but (b) Defendant's lawyers should be forbidden from even telling him what they are.

Defense counsel contends that such a restriction would violate his client's Fifth and Sixth Amendment rights, and also contends that it is not feasible to require that defense counsel make a motion (or, more likely multiple motions, given that discovery will be "rolling," according to the Government) to individually litigate the

designation of "hundreds" of documents in order to even talk about this evidence with his client. Accordingly, this Opposition is necessary.

### III.  Argument

#### A.  The Government's Assertion that there Is A Large Amount of New Evidence Underscores the Constitutional Imperative for Counsel to Discuss the Evidence with the Defendant

The Government's Motion asserts that the discovery "contains hundreds of photos and videos depicting child sexual abuse material ("CSAM")…" ECF Doc. No. 30, p. 2. On what basis was this statement made? Government counsel represents that the evidence in this case is "largely" the same as the evidence in Mr. Garcia's state-court prosecution in California ("Prior State Case"). Mason Decl. Par. 5. Undersigned counsel defended Mr. Garcia in the Prior State Case. Undersigned knows the evidence in the Prior State Case, and does not agree that there are "hundreds" of photos and videos depicting CSAM among that evidence. Mason Decl. Par 6. Additionally, the allegations in the prior state case concerning the alleged taking photos nude or semi-nude pictures of minors were *not* directed against Mr. Garcia, but rather against Defendant Alondra Ocampo. *See* Mason Decl. Ex. D (Prior State Case Count Eleven (alleging eight overt acts related to taking photos, all alleged solely as to Defendant Ocampo); Counts Twelve to Twenty-One (counts related to the alleged taking of photos, all charging solely Defendant Ocampo). Those counts were all dismissed in the state case, and Ms. Ocampo is not charged in the instant case before this Court. Moreover, the federal indictment in the Central District of California ("Prior Federal Case") concerns only a single video. *See* Mason Ex. E.

This is a big deal for the instant case, because the Government's claim that it has "hundreds" of images means that the Government must be referring to something more than the single video at issue in the Prior Federal Case. If the Government is planning on recycling the dismissed Prior State Case allegations in this case—namely, that Ms. Ocampo took nude or semi-nude photos of minors—it will be critical to determine whether the Government is claiming to have evidence showing that Mr. Garcia ever saw, possessed, or was even aware of, these alleged photos, and if so, what that evidence is. If the Government is claiming to have uncovered new evidence against Mr. García that was not part of the prior state-court case, that only increases the importance of defense counsel discussing the evidence with Mr. Garcia. Such new evidence would be the crux of Government's case relating to Ms. Ocampo's alleged photos. How could the defense possibly evaluate the merits of such allegations without

being able to discuss with Mr. Garcia, e.g., that the Government is claiming that he received or saw or conspired to take *x* photos of *y* individuals?  Under the Government's proposed language, the defense would be prohibited from even telling him that the Government's evidence includes photos (if it does), what those photos show, and what evidence the Government claims connects Mr. Garcia to the photos.  All the Government has to do is put an AEO label on the evidence, and then defense counsel will be forbidden, per the Court's order, to talk about the evidence with their clients.

Any trial carried out under such restriction would not be fair, and would violate Mr. Garcia's rights under the Fifth and Sixth Amendments, for the reasons set forth in the next section, *infra*.  Mr. Garcia will not willingly acquiesce to such restrictions.  If they are to be imposed, it will be over Mr. Garcia's objections.

### B. The Constitution Does Not Permit an Order Forbidding Defense Counsel to Discuss Evidence With Their Clients

The Government's proposed AEO designation would "preclude[] the defense from sharing AEO material or the content of such material 'with any other persons, including the defendants…'" ECF Doc. No. 30, p. 2. The Sixth Amendment provides that "In all criminal prosecutions, the accused shall enjoy the right … to be informed of the nature and cause of the accusation; … and to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The Sixth Amendment 'contemplat[es] a norm in which the accused, and not a lawyer, is master of his own defense." *Gannett Co. v. DePasquale*, 443 U.S. 368, 382 n.10 (1979). "The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense."  *Faretta v. California*, 422 U.S. 806, 819 (1975).

These rights are the most fundamental rights in our criminal justice system.  The Anglo-American tradition is not one that countenances convicting people while hiding the evidence from them.  Lawyers have ethical duties to their clients, as well as constitutional duties of effective representation.  "Representation of a criminal defendant entails certain basic duties. … From counsel's function as assistant to the defendant derive the overarching duty to advocate the defendant's cause and the more particular duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution." *Strickland v. Washington*, 466 U.S. 668, 688 (1984).

The order requested by the Government is an order forbidding defense counsel from satisfying their constitutional duty of effective representation. Under the PPO, counsel are not permitted to say anything to their clients about the contents of any evidence the Government labels AEO. That restriction is unconstitutional. In the "Applicable Law" section of the Government's motion, the Government fails to identify legal authorities that support their proposed order. The Government cites to Fed. R. Crim. P. 16(d)(1), which provides that "for good cause" shown, the Court may "deny, restrict, or defer discovery or inspection, or grant other appropriate relief," ECF Doc. No. 30, p. 2. Nothing in this rule states that a court may order a defense attorney not to discuss items of evidence with his client. And nothing in this rule could so state, if the 5th and 6th Amendments entail that a defendant has the right to discuss with his attorney the evidence against him.

There is no caselaw holding, or even implying, that such a restriction could pass constitutional muster. The Government quotes from *Alderman* v. *United States,* 394 U.S. 165, 185 (1969) as follows: "[T]he trial court can and should, where appropriate, place a defendant and his counsel under enforceable orders against unwarranted disclosure of the materials which ***they*** may be entitled to inspect." (emphasis added). That proposition is unremarkable and undisputed: no one doubts that courts have the authority to restrict disclosure to evidence to people *other than* the defendant and his counsel. The *Alderman* quote, indeed, assumes and takes as self-evidence the proposition that *the defendant himself or herself* has the right to see and discuss the evidence against him. *Alderman* provides no support for a claim of authority to order concealment *from the defendant himself* of the existence and nature of evidence against him. [1]

The Government's other citations equally fail to support the constitutional basis for its proposed order. The Government cites a recent SDNY case, *United States v. Maxwell,* 2020 WL 4431834, at *1 (S.D.N.Y. July 30, 2020), for the following

---

[1] *Alderman* is a well-known case, and it is worth noting in this context that it involved an alleged Russian spy ring at height of the Cold War. Even in that context, the Court did not contemplate or countenance the idea that a criminal defendant could be prevented from learning about the evidence to be used against him. Indeed, the Court expressly noted, on the page before the quote referenced by the Government, that if the Government wishes to conceal from a criminal defendant the evidence against him, the way to accomplish that is to dismiss the case: "It may be that the prospect of disclosure will compel the Government to dismiss some prosecutions in deference to national security or third-party interests. But this is a choice the Government concededly faces with respect to material which it has obtained illegally and which it admits, or which a judge would find, is arguably relevant to the evidence offered against the defendant." 394 U.S. at 184.

proposition: "It is well-established that the need to protect the safety and privacy of witnesses constitutes good cause for the entry of a protective order." ECF Doc. No. 30, p. 3. This proposition is also undisputed and unremarkable; no one is denying that protective orders may be entered by courts. The issue is the *contents of* the protective order, and the specific provision sought by the Government in *this* case. And the Government's cited examples of protective orders entered in this District, ECF Doc. No. 30 at p. 4, provide no support for its position, because in those cases, defense counsel *stipulated* to the orders. *See United States v. Combs*, 24-cr-542, ECF Doc. No. 26, at 1 ("…with the consent of the undersigned counsel…"); *United States v. Alexander*, 24-cr-676, ECF Doc. No. 71, at 1 (same); *United States v. Kwok*, 23-cr-0118, ECF Doc. No. 63, at 1 (same). Entry of an order when no objects is not authority for entry of that order when someone *does* object.

  The defendants in *this* case are objecting now. The fact that other defendants in other cases did not object is not a legal argument. Despite the Government's meet-and-confer comment that it is confident that the Court will enter the order over the defense objection, the Government, in its motion, fails to identify a single case in which a court has imposed such an order over the objection of the defense. Even worse, in one of the cases the Government cites, the protective order turns out, when one pulls up the document from the docket, not to have an "Attorney's Eyes Only" provision in it at all. *United States v. Perez*, 23-cr-99, ECF Doc. No. 24-1 (Protective Order, signed by one of the same AUSAs appearing in the instant case, which not only does not have an AEO provision, but also expressly states that the defendant may review all evidence).

  The Government's brief also fails to identify a single case in which the Second Circuit has analyzed and endorsed the type of provision the Government is seeking (viz., a provision that forbids defense counsel from discussing portions of the evidence with their clients). The defense's research reveals no such case. The closest case we could find is *Contreras v. Artus*, 778 F.3d 97 (2d Cir. 2015). *Contreras* was a habeas petition from a state-court rape conviction in which the Second Circuit analyzed an order made by a state trial court forbidding defense counsel from disclosing to his client the existence or contents of a handwritten note that was found in the victim's apartment.

  In *Contreras*, the Second Circuit concluded that a state trial-court order prohibiting defense counsel from disclosing to his client the contents of the note was not so unreasonable as to require vacatur in a habeas posture, because all the courts below concluded that the note was not relevant to the trial, and there was no plausible

6

contention that defense counsel's discussing the note with his client would materially assist the defense.

*Contreras* was a sexual assault prosecution. On the morning of the first day of trial, the prosecution made an oral motion for a protective order to preclude the defense from seeing the contents of "some personal papers of the complainant." 778 F.3d at 102. The item at issue was a handwritten note, in the complainant's handwriting, that had been found in the apartment on the day of the incident, and included references to consensual sex. The note did not specify to whom it referred, but it was undisputed that the complainant, who was the defendant's estranged wife, was in a romantic relationship with a different man at the time of the incident. *Id*.

In response to the prosecution's oral motion to withhold the note from the defense, the court reviewed the note in camera, and then held an ex parte hearing with the prosecution from which the court excluded both the defendant and defense counsel. *Id*. at 102. The court questioned the complainant, who testified that the note referred to her new romantic partner, not to the defendant. *Id*. at 103. The court then called defense counsel, but not the defendant, into the courtroom, and ordered as follows: "I am going to disclose to Mr. Apfelbaum the contents of the note, but I am going to place him under the order of the court not to disclose that to his client or to any other person without prior order of the court." *Id*. The court then allowed defense counsel to question the complainant, who again testified that the note referred to someone other than the defendant. *Id*. at 103-04.

Defense counsel objected to the order precluding him from discussing the note with his client, and the court overruled the objection because the note "had nothing to do with the case," and thus precluding counsel from discussing it with the defendant did not violate the defendant's rights. *Id*. at 105. The case ultimately reached the Second Circuit as an appeal of the denial of a federal habeas petition. *Id*. at 106.

What matters most for the instant case is the Second Circuit's analysis. First, it turned on the relevance of the document. The Second Circuit held that Contreras had failed to show state courts' rulings that the note was irrelevant were objectively unreasonable, and that there was no merit to his claim that the note was or could have been relevant. *Id*. at 108-110.

By contrast, no argument for irrelevance could possibly be made in the instant case, because the materials the Government seeks to prevent Defendant from knowing about or discussing are part of the Government's evidence against him. The

**October 17, 2025**
Page 8 of 9

Government thinks these materials are relevant, and intends to use these materials to try to convict Defendant. Thus, *Contreras* provides support for Defendant's position here, because its holding—that there's no constitutional error in precluding a defendant from learning about an irrelevant fact—carries as its implied corollary the converse proposition: that there would be a constitutional error in precluding a defendant from learning about a relevant fact. Indeed, the materials the Government seeks to conceal here are not just relevant, but actually comprise part of the gravamen of the charged crimes.

Second, the Second Circuit emphasized that order was narrow in scope, because it applied to only to the note, *id*. at 111—and that it had a built-in escape clause: the order "did not prohibit discussion of that subject matter if initiated by Contreras from his independent knowledge." *Id*. at 112. By contrast, PPO here is facially unlimited in scope—there is no numerical limit on the number of documents Government can label "AEO"—and there is no built-in exception for client-initiated discussions.

Finally, the Second Circuit held that Contreras' being told about the note and being able to discuss its contents with his attorney would not have meaningfully assisted his attorney's ability to present his case. *Id*. at 114. This is obviously not the case here, when the materials the Government is seeking to keep Defendant from knowing about are the very evidence it contends make him guilty of the charged offenses. It cannot possibly be claimed—and the Government does not and surely will not make such a claim here—that defense counsel's discussing with the Defendant the Government's evidence against the Defendant would not meaningfully assist counsel's ability to defend this case.

In sum, the Government has not identified any legal authorities that support its claim that an order prohibiting defense counsel from discussing evidence with their clients is constitutional, or its claim that such orders PPO have ever been (let alone routinely are) imposed over a defense objection. And *Contreras*, the most applicable Second Circuit decision, strongly implies that such a prohibition can only survive constitutional scrutiny if it applies only to *irrelevant* material. Here, the Government is demanding an order precluding defense counsel from having any discussing with the Defendant relating to the existence or contents of materials that are undisputedly relevant, and indeed are contended to be evidence of the charged crime. Defendant believes that such an order would not survive appellate review.

### IV.   Conclusion

Mr. García respectfully requests that this Court amend the Proposed Protective Order, ECF Doc. No. 30-1, as follows: that the Court delete the phrase "or the content of the AEO Material" from Paragraph 9 of the Proposed Protective Order, and add to that paragraph the following sentence: "Nothing in this paragraph shall limit the right of defense counsel to discuss with defendants the contents or substance of any evidence in this case for the purpose of preparing the defense case."

Dated: October 17, 2025                         Respectfully submitted,

                                                WERKSMAN JACKSON & QUINN LLP
                                                By:   /s/ *Caleb Mason*
                                                     Caleb Mason
                                                     Attorney for Petitioner

cc:   Counsel of record (by ECF)