UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

NAASÓN JOAQUÍN GARCÍA,
EVA GARCÍA DE JOAQUÍN,
JORAM NÚÑEZ JOAQUÍN, *et al.*,

Defendants.

S1 25 Cr. 370 (LAP)

**THE GOVERNMENT'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTIONS TO COMPEL GRAND JURY MATERIALS**

JAY CLAYTON
United States Attorney
Southern District of New York
26 Federal Plaza, 37th Floor
New York, New York 10278

Ryan W. Allison
Lisa Daniels
Elizabeth A. Espinosa
Michael R. Herman
Assistant United States Attorneys
   *Of Counsel*

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT ................................................................................................................... 3

     A.     Applicable Law ................................................................................................. 3

     B.     Discussion ........................................................................................................ 5

          1.  Naasón Cannot Carry His Burden to Justify the Disclosure of Grand Jury Materials ................................................................................................ 5

          2.  Joram's Reliance on the Religious Freedom and Restoration Act of 1993 Does Not Outweigh the Need for Grand Jury Secrecy ................................. 15

          3.  Eva Has Forfeited Any Further Arguments .................................................... 15

CONCLUSION ............................................................................................................... 16

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*Carpenter v. United States*, 585 U.S. 296 (2018) ............................................................ 4

*Costello v. United States*, 350 U.S. 359 (1956) ............................................................... 5

*Douglas Oil Co. of California v. Petrol Stops Northwest*,
   441 U.S. 211 (1979) ...................................................................................................... 4

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*,
   546 U.S. 418 (2006) .................................................................................................... 15

*In re Craig*, 131 F.3d 99 (2d Cir. 1997) ......................................................................... 3

*In re Grand Jury Subpoena Duces Tecum Dated Jan. 2, 1985 (Simels)*,
   767 F.2d 26 (2d Cir. 1985) ......................................................................................... 14

*In re Grand Jury Subpoena*, 103 F.3d 234 (2d Cir. 1996) .......................................... 3, 4

*Presbyterian Church in the United States v. Mary Elizabeth Blue Hull
   Memorial Presbyterian Church*, 393 U.S. 440 (1969) ................................................. 7

*United States v. Amer*, 110 F.3d 873 (2d Cir. 1997) ....................................................... 7

*United States v. Ballard*, 322 U.S. 78 (1944) ................................................................. 7

*United States v. Bankman-Fried*, 680 F. Supp. 3d 289 (S.D.N.Y. 2023) ..................... 10

*United States v. Beasley*, 72 F.3d 1518 (11th Cir. 1996) ................................................ 7

*United States v. Casamento*, 887 F.2d 1141 (2d Cir. 1989) ........................................... 5

*United States v. Dawkins*, 999 F.3d 767 (2d Cir. 2021) ..................................... 6, 12, 13

*United States v. Green*, 2023 WL 7180645 (2d Cir. Nov. 1, 2023) ............................. 16

*United States v. Hernandez*, 980 F.2d 868 (2d Cir. 1992) .............................................. 6

*United States v. Jasper*, 2003 WL 21709447 (S.D.N.Y. July 23, 2003) ....................... 5

*United States v. Jones*, 129 F.3d 718 (2d Cir. 1997) ................................................... 13

*United States v. Leung*, 40 F.3d 577 (2d Cir. 1994) ............................................. passim

*United States v. Majeed*, 2024 WL 992884 (D. Kan. Mar. 6, 2024) ............................................. 7

*United States v. Marcus*, 628 F.36 36 (2d Cir. 2010) ................................................................. 5

*United States v. Ohle*, 678 F. Supp. 2d 215 (S.D.N.Y. 2010) ....................................................... 10

*United States v. Peralta*, 763 F. Supp. 14 (S.D.N.Y. 1991) ........................................................ 9

*United States v. Phillips*, 2023 WL 6812286 (S.D.N.Y. Oct. 16, 2023) ........................................ 9

*United States v. Proctor & Gamble, Co.*, 356 U.S. 677 (1958)............................................. passim

*United States v. Ramirez-Amaya*, 812 F.2d 813 (2d Cir. 1987).................................................... 11

*United States v. Raniere*, 384 F. Supp. 3d 282 (E.D.N.Y. 2019) ................................................. 12

*United States v. Raphael*, 786 F. Supp. 355 (S.D.N.Y. 1992)...................................................... 14

*United States v. Rodriguez*, 2019 WL 1949846 (S.D.N.Y. Apr. 19, 2019).................................... 4

*United States v. Sampson*, 898 F.3d 270 (2d Cir. 2018)............................................................. 6, 13

*United States v. Sells Engineering, Inc.*, 463 U.S. 418 (1983) ...................................................... 4

*United States v. Sun Myung Moon*, 718 F.2d 1210 (2d Cir. 1983)................................................ 7

*United States v. Torres*, 901 F.2d 205 (2d Cir. 1990)................................................................. 5

*United States v. Ulbricht*, 858 F.3d 71 (2d Cir. 2017)............................................................... 4, 14

*United States v. Wey*, 2017 WL 237651 (S.D.N.Y. Jan. 18, 2017) .............................................. 8

*United States v. Williams*, 701 F. Supp. 3d 258 (S.D.N.Y. 2023) ............................................... 15

**Statutes**

18 U.S.C. § 1591(b)(1) ............................................................................................................. 8

18 U.S.C. § 1591(b)(2) ............................................................................................................. 8

18 U.S.C. § 1591(e)(5)............................................................................................................. 7

18 U.S.C. § 1962(d) ................................................................................................................. 12

18 U.S.C. § 3500...................................................................................................................... 11

42 U.S.C. §§ 2000bb, *et seq.*.................................................................................................... 15

**Other Authorities**

Felony Plea Tr., *California v. Naasón Joaquín García, et al.*,
   No. BA484133 (Cal. Sup. Ct. June 3, 2022) ............................................................... 1, 2

Sentencing Tr., *California v. Naasón Joaquín García, et al.*,
   No. BA484133 (Cal. Sup. Ct. June 8, 2022) ................................................................ 2

**Rules**

Fed. R. Crim. P. 6(e) ...................................................................................................... 4

## PRELIMINARY STATEMENT

On September 2, 2025, a Grand Jury in this District returned Indictment S1 25 Cr. 370 (LAP) charging defendants Naasón Joaquín García ("Naasón"), Eva García de Joaquín ("Eva"), Joram Núñez Joaquín ("Joram"), and others with a long-running criminal conspiracy to sexually traffic and abuse women and children, create child pornography, perpetrate financial crimes, and obstruct justice. (Dkt. 4). The thirty-one-page Indictment describes in considerable detail the various ways the Grand Jury found the defendants perpetrated these crimes, providing the defendants ample notice and opportunity to prepare to meet the evidence at trial.

Nevertheless, Naasón and Joram, joined by Eva, have filed extraordinary motions to unseal all the transcripts and exhibits presented to the Grand Jury, documents that are subject to a centuries-old presumption of secrecy, ostensibly to aid their forthcoming motions to dismiss the Indictment. (Dkts. 51-53). The defendants come nowhere close to making the particularized and compelling showing of government misconduct needed to rebut the powerful presumptions of grand jury secrecy and regularity. Moreover, none of the routine claims the defendants intend to raise in their anticipated motions will result in the dismissal of any Count, and granting the unusual relief of unsealing the grand jury materials is not going to change that. The motions to unseal the grand jury materials should be denied.

\*   \*   \*

Naasón Joaquín García is a convicted child sex offender. In 2017 and 2018, by his own admission, Naasón sexually abused three minors who were members of the church he leads, La Luz del Mundo (the "LLDM Church" or the "Church"). Felony Plea Tr. 6-7, *California v. Naasón Joaquín García, et al.*, No. BA484133 (Cal. Sup. Ct. June 3, 2022). For those crimes, Naasón pled guilty in California state court to multiple sex offenses against minors, and he was sentenced to

prison. *Id.*; Sentencing Tr. 87, *California v. Naasón Joaquín García, et al.*, No. BA484133 (Cal. Sup. Ct. June 8, 2022).

That was just the tip of the iceberg. As alleged in this case, Naasón sexually abused and victimized many more LLDM Church members, and he did not do it alone. (*See, e.g.*, Dkt. 4 ¶¶ 8-14). Since December 2014, Naasón has led a criminal conspiracy (the "Joaquín LLDM Enterprise" or the "Enterprise"), including his mother Eva García de Joaquín and his nephew Joram Núñez Joaquín, that used various methods principally to enable Naasón to live with impunity. (Dkt. 4 ¶ 1). Naasón, with the aid of so-called "secretaries," sexually trafficked and abused girls, boys, and women in the LLDM Church and orchestrated the production of massive amounts of child pornography. (Dkt. 4 ¶¶ 8-11). Naasón, facilitated by his financial coconspirators, oversaw bank fraud, bulk cash smuggling, structuring, and forced labor schemes to enrich himself and his family and to fund his sex trafficking activities. (Dkt. 4 ¶¶ 12-13). And when the women and teenagers whom Naasón sexually abused spoke up to expose his crimes, Naasón and Joram, among others, led a cohort of coconspirators who systematically tried to silence them with violence and threats. (Dkt. 4 ¶ 14).

Naasón assumed the leadership of the Joaquín LLDM Enterprise from his father, Samuel Joaquín Flores ("Samuel"), who led the Enterprise from 1964 until his death in 2014. (Dkt. 4 ¶¶ 9, 11). For decades, Samuel perpetrated similarly horrific sexual abuse of women and children who devoted themselves to the LLDM Church. (Dkt. 4 ¶ 9-10). Samuel also relied on coconspirators to enable his abuse, including his secretaries and his wife, Eva. (Dkt. 4 ¶ 10). Eva and other members of the Joaquín LLDM Enterprise helped identify young LLDM Church members for Samuel, prepared those girls for Samuel's abuse, and when necessary, physically held children down so that Samuel could rape them. (Dkt. 4 ¶¶ 9-10).

The Joaquín LLDM Enterprise used various means to compel their victims to submit to sex trafficking and abuse. (Dkt. 4 ¶¶ 24(a)-(f)). They used physical force and threats of physical force to make women and children comply with the Enterprise's sexual demands. (Dkt. 4 ¶¶ 10, 24(c), 31, 33). They threatened to cut victims off from their families and support networks within the LLDM Church if the victims did not agree to have sex at Naasón's or Samuel's direction. (Dkt. 4 ¶ 24(c)). And they manipulated and abused the culture of the LLDM Church, which taught obedience to Church leadership, to turn Church members—who feared damnation and other harms—into victims of sex crimes. (Dkt. 4 ¶ 24(c)).

For years, the Joaquín LLDM Enterprise was kept secret within the LLDM Church. It consisted principally of select members of the Church's inner circle who abused the power, doctrine, and structure of the Church to sexually abuse and exploit other members. (Dkt. 4 ¶ 1). There were, and are, many LLDM Church members in Mexico, the United States, and other countries around the world who were not members of the Joaquín LLDM Enterprise and had no knowledge of, and played no role in, the Enterprise's criminal activities. (*See* Dkt. 4 ¶ 6). There were also many other Church members who were victimized by the Joaquín LLDM Enterprise. (*See, e.g.*, Dkt. 4 ¶ 9).

## ARGUMENT

### A. Applicable Law

"There is a tradition in the United States, a tradition that is older than our Nation itself, that proceedings before a grand jury shall generally remain secret." *In re Craig*, 131 F.3d 99, 101 (2d Cir. 1997); *see also In re Grand Jury Subpoena*, 103 F.3d 234, 239 (2d Cir. 1996).[1] "Rule 6(e) of

---

[1] Quotations omit internal quotation marks, citations, and previous alterations.

3

the Federal Rules of Criminal Procedure codifies the traditional rule of grand jury secrecy." *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 425 (1983). "[T]he proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." *United States v. Ulbricht*, 858 F.3d 71, 106 (2d Cir. 2017) (quoting *Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 218 (1979)), *overruled on other grounds by Carpenter v. United States*, 585 U.S. 296 (2018). At least "five rationales" support this rule of grand jury secrecy:

> (1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before the grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect the innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt.

*Id.* (quoting *In re Grand Jury Subpoena*, 103 F.3d at 237).

Because of these important interests, grand jury proceedings are "entitled to a 'presumption of secrecy and closure,'" *id.* (quoting *In re Grand Jury Subpoena*, 103 F.3d at 239), and "a presumption of regularity," *United States v. Leung*, 40 F.3d 577, 581 (2d Cir. 1994). Rule 6(e) permits the unsealing of grand jury materials only when the party seeking disclosure can establish "with particularity" a "compelling necessity" for disclosure. *United States v. Proctor & Gamble, Co.*, 356 U.S. 677, 682 (1958). To satisfy that standard, the party seeking disclosure must show that the grand jury materials they seek are "needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." *Ulbricht*, 858 F.3d at 107 (quoting *In re Grand Jury Subpoena*, 103 F.3d at 239); *see United States v. Rodriguez*, 2019 WL 1949846, at *1 (S.D.N.Y. Apr. 19, 2019) ("[T]he burden is on the party seeking disclosure to show a

4

particularized need that outweighs the need for secrecy."). "A review of grand jury minutes is rarely permitted without specific factual allegations of government misconduct." *United States v. Torres*, 901 F.2d 205, 233 (2d Cir. 1990), *abrogated on other grounds by United States v. Marcus*, 628 F.36 36, 41 (2d Cir. 2010). Unsealing grand jury materials is an "extraordinary act." *United States v. Jasper*, 2003 WL 21709447, at *7 (S.D.N.Y. July 23, 2003) (citing *Costello v. United States*, 350 U.S. 359, 363-64 (1956); *United States v. Casamento*, 887 F.2d 1141, 1182 (2d Cir. 1989)).

## B. Discussion

### 1. Naasón Cannot Carry His Burden to Justify the Disclosure of Grand Jury Materials

In this motion seeking "extraordinary" relief, *Jasper*, 2003 WL 21709447, at *7, Naasón does not even acknowledge the high burden he must overcome to unseal grand jury materials, much less demonstrate how he has satisfied that burden. Naasón's arguments to unseal the grand jury materials reduce essentially to requests to embark on a fishing expedition to find support for his forthcoming motion to dismiss the Indictment. But Naasón's arguments for dismissal are futile, and he cannot overcome the firm presumptions of grand jury secrecy and regularity by speculating that he might find support for meritless claims somewhere in the grand jury materials. In any event, Naasón has not established with particularity a compelling need for the unusual remedy of unsealing grand jury materials, because none of his anticipated dismissal arguments actually depends on what happened in the grand jury or involves a claim of government misconduct.

#### a. Naasón's Constitutional Arguments Do Not Outweigh the Need for Grand Jury Secrecy

Naasón fails to explain why his anticipated motion to dismiss the Indictment based on the Free Exercise Clause of the First Amendment justifies his extreme request to order the disclosure grand jury materials. (*See* Dkt. 51, at 10-17).

5

Naasón's anticipated motion to dismiss is not a compelling reason for the disclosure of grand jury materials because the arguments he has previewed will fail regardless of what happened in the grand jury. *See Proctor & Gamble, Co.*, 356 U.S. at 682. To survive a motion to dismiss, "an indictment need do little more than track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *United States v. Dawkins*, 999 F.3d 767, 779 (2d Cir. 2021). "The purpose of this requirement is to give a defendant adequate notice of the charges to permit him to plead former jeopardy upon prosecution and to enable him to prepare a defense." *United States v. Hernandez*, 980 F.2d 868, 871 (2d Cir. 1992). It is not proper for a court deciding a motion to dismiss to "weigh whether certain factual allegations … [a]re consistent with the charged violations." *Dawkins*, 999 F.3d at 780. Doing so would "risk[] invading 'the inviolable function of the jury' in our criminal justice system" and "upset[ting] the policy choices reflected in the criminal discovery rules." *United States v. Sampson*, 898 F.3d 270, 280-81 (2d Cir. 2018).

The Indictment here clearly satisfies these basic pleading standards, and Naasón does not argue otherwise. Each Count of the Indictment tracks the language of the alleged statutory violations and provides approximate details about the time and place of the alleged crimes. These allegations enable Naasón, Eva, and Joram to raise any double jeopardy arguments and prepare for trial. Nothing about the grand jury materials that Naasón seeks will affect that analysis.

Naasón nevertheless asserts that the Indictment will need to be dismissed because he had a free exercise right to coerce adults to participate in commercial sex acts if the means of coercion included promising spiritual blessings to victims, threatening victims with spiritual damnation and other harms, and otherwise making threats that related to the victims' religious beliefs. (*See, e.g.*, Dkt. 51, at 12-13). That argument is obviously wrong on the law, and unsealing the grand jury materials that Naasón seeks will not make it right. *See, e.g.*, *United States v. Sun Myung Moon*,

6

718 F.2d 1210, 1227 (2d Cir. 1983) ("The First Amendment does not insulate a church or its members from judicial inquiry when a charge is made that their activities violate a penal statute."); *United States v. Beasley*, 72 F.3d 1518, 1527 (11th Cir. 1996) (per curiam) (in a racketeering conspiracy prosecution, the jury could consider the defendant's religious beliefs and "affiliation with a religious group … where probative of an issue in a criminal prosecution," such as how the "religious teachings were used to justify, rationalize, and promote crime," and "to show how [a religious leader] exerted influence and control over the members and how he used his preachings to justify heinous crimes"). The sex trafficking laws are "neutral law[s] of general applicability" that do not violate the Free Exercise Clause even if, as Naasón appears to claim, they "impose[d] an incidental burden on a religious practice." *United States v. Amer*, 110 F.3d 873, 879 (2d Cir. 1997) (upholding a kidnapping statute as applied to any "conduct within its reach without regard to whether the conduct was religiously motivated"); *cf. United States v. Majeed*, 2024 WL 992884, at *10 (D. Kan. Mar. 6, 2024) (rejecting argument that the First Amendment bars labor trafficking charges that involved the use of threats to "enforce[] … religious doctrine" and manipulating victims' "fear of what may happen in the afterlife").[2]

---

[2] This case is nothing like *United States v. Ballard*, 322 U.S. 78 (1944), or *Presbyterian Church in the United States v. Mary Elizabeth Blue Hull Memorial Presbyterian Church*, 393 U.S. 440 (1969), which Naasón discusses extensively. (*See* Dkt. 51, at 3-6, 11-13, 17). None of the charges against Naasón turns on whether the religious tenets of the LLDM Church are objectively true, *see Ballard*, 322 U.S. at 86, or whether Naasón and his coconspirators adhered to the Church's doctrine, *see Presbyterian Church*, 393 U.S. at 449-50. To decide the issue of coercion for the sex-trafficking-of-adults charges, the jury will only need to examine what Naasón and his coconspirators did with the LLDM Church's religious teachings—*i.e.*, whether Naasón used his victims' religious beliefs, among other means, corruptly to cause the victims to engage in commercial sex acts through threats of serious harm. *See* 18 U.S.C. § 1591(e)(5) ("serious harm" includes "psychological … harm … that is sufficiently serious").

Even if accepted, Naasón's free exercise claim is too limited to justify the disclosure of grand jury materials or dismissing any Count of the Indictment. Naasón's effort to undermine the charged "coercion" theory applies only to the crime of sex trafficking of adults, in violation of 18 U.S.C. § 1591(b)(1). The Government does not need to prove coercion of any kind to establish that Naasón is guilty of sex trafficking of minors, in violation of 18 U.S.C. § 1591(b)(2), as charged as an object of the conspiracies in Counts One and Two, or to establish that Naasón is guilty of racketeering conspiracy as charged in Count One, conspiracy to produce child pornography as charged in Count Five, or child exploitation enterprise as charged in Count Six. And for the Counts that do require some force or coercion—that is, sex trafficking of adults as charged as an object of the conspiracies in Counts One and Two and as charged in Count Three, as well as some of the state sex offenses listed in Count Four—the Indictment alleges multiple alternative theories of liability that do not depend on the conduct that Naasón terms "spiritual coercion." Those alternatives include allegations that Naasón and his coconspirators compelled victims to participate in commercial sex acts through "physical force," "restraint[s]," "threats of force," and threats to end the victims' "relationship with [their] family members or friends inside the LLDM Church." (Dkt. 4 ¶¶ 24(c), 31, 33).[3] Naasón's free exercise argument does not address any of that conduct and thus cannot support the dismissal of any Count. It would be useless to unseal grand jury materials to serve a legal argument that could not achieve any relief.

Moreover, Naasón cannot demonstrate a compelling need for grand jury materials because his First Amendment argument is not a claim of government misconduct to rebut the presumption

---

[3] Naasón's complaint that the detailed speaking Indictment is too "vague" about his means of force and coercion (*see* Dkt. 51, at 13-14) is not a basis for any relief. *See, e.g.*, *United States v. Wey*, 2017 WL 237651, at *5 (S.D.N.Y. Jan. 18, 2017) ("An indictment does *not* … have to specify evidence or details of how the offense was committed.").

8

of regularity in grand jury proceedings but rather a challenge to a legal theory that is already apparent from the face of the Indictment. *See Proctor & Gamble, Co.*, 356 U.S. at 682; *Leung*, 40 F.3d at 581. The Indictment explicitly alleges that Naasón and his coconspirators used the coercive means of sex trafficking that Naasón claims he had a constitutional right to deploy. (*See, e.g.*, Dkt. 4 ¶ 24(c) (describing the means of force and coercion used to commit sex trafficking, including, among other things, leveraging victims' belief that "serving the Apostle would lead to religious blessings, whereas questioning, doubting, or disobeying the Apostle was a sin that could lead to eternal damnation")). The issue of whether the First Amendment requires the dismissal of the Indictment because of that portion of the alleged coercion theory is thus already joined. There is no need to unseal grand jury materials to ripen or resolve that dispute.[4] Naasón's guess that the legal instructions given to the Grand Jury must have included some additional support for a constitutional challenge beyond the coercion theories already contained in the Indictment is "mere speculation that ... falls far short of the showing to overcome the presumption of secrecy." *United States v. Phillips*, 2023 WL 6812286, at *2 (S.D.N.Y. Oct. 16, 2023).

**b. Naasón's Venue Arguments Do Not Outweigh the Need for Grand Jury Secrecy**

Naasón fails to explain why his anticipated motion to dismiss based on venue creates a compelling need for the disclosure of grand jury materials. (*See* Dkt. 51, at 17-21).

Like any other motion to dismiss based on a claim of insufficiency, a motion to dismiss based on lack of venue turns on whether the allegations in an indictment, on their face, support

---

[4] This, among other reasons, distinguishes *United States v. Peralta*, 763 F. Supp. 14 (S.D.N.Y. 1991), the one decision Naasón cites that unsealed grand jury materials. In that case, the defendant challenged the accuracy of the Government's legal instructions to the grand jury on a subsidiary issue that was not apparent from the face of the indictment. *Id.* at 19-20. Here, Naasón seeks to challenge a valid legal theory that the Indictment explicitly describes.

9

bringing the charge in this District. *See, e.g.*, *United States v. Bankman-Fried*, 680 F. Supp. 3d 289, 314-15 (S.D.N.Y. 2023). Including an allegation at the beginning of each count that the offense occurred "in the Southern District of New York and elsewhere" satisfies that requirement. *United States v. Ohle*, 678 F. Supp. 2d 215, 231 (S.D.N.Y. 2010) (Sand, J.). "The question of whether there is sufficient evidence to support venue is appropriately left for trial." *Id.*

Again, Naasón cannot demonstrate a compelling need for venue-based grand jury materials because his dismissal motion is futile. *See Proctor & Gamble, Co.*, 356 U.S. at 682. The Indictment alleges that the relevant criminal conduct for each Count occurred, began, continued, or concluded in this District and elsewhere. (*See, e.g.*, Dkt. 4 ¶¶ 15, 24(d), 25, 27, 29, 30, 31, 33, 34, 35, 36, 37, 38(d)). That is enough to survive a motion to dismiss. *See Ohle*, 678 F. Supp. 2d at 231. No review of grand jury materials is necessary to reach that conclusion.

Naasón does not claim any government misconduct on the venue issue. *See Leung*, 40 F.3d at 581. Naasón instead focuses his argument entirely on previewing the venue defense on Count Four that he apparently intends to advance at trial. (*See* Dkt. 51, at 18-19). Nearly everything Naasón has to say on this score is factually or legally incorrect. It is unnecessary for the Government to respond to each of Naasón's false claims, but for example: It is not accurate that venue for all six Counts in the Indictment rests entirely on the time Naasón brought his victims to Manhattan in July 2017. (*See* Dkt. 51, at 20). The trial evidence will show that the Joaquín LLDM Enterprise committed crimes in New York for decades. It is not accurate to suggest that the evidence of the July 2017 trip to New York consists entirely of Victim-7's testimony. (*See* Dkt. 51, at 18-19). There is documentary proof that Naasón, Victim-7, and others landed in New York on a flight from South Africa on July 3, 2017, that Naasón took Victim-7 and others to a hotel in Manhattan for several days, and that Naasón led the Enterprise while he was in this District. It is

10

not accurate to suggest that Naasón first developed the intent to rape Victim-7 after he had already arrived in New York. (*See* Dkt. 51, at 18-20). As alleged in the Indictment, the members of the Joaquín LLDM Enterprise took their victims on apostolic trips, like the one to New York in 2017, with the specific intent to enable Naasón or Samuel to abuse the victims during the trips. (Dkt. 4 ¶ 24(d)). And it is not accurate to suggest that it is improper to base venue on flights that passed over the waters surrounding the airports in New York and New Jersey (*see* Dkt. 51, at 21 & n.3) as courts in this District have done for over forty years. *See, e.g.*, *United States v. Ramirez-Amaya*, 812 F.2d 813, 816 (2d Cir. 1987).

Regardless, the Court does not need to address those issues on this motion because Naasón's speculation about the Government's venue evidence or legal theories does not justify the disclosure of grand jury materials at this stage. All that is relevant at the motion to dismiss stage is whether the Indictment sufficiently alleges venue. That analysis turns on the face of the Indictment alone. Trial is the appropriate mechanism for Naasón to test the Government's venue evidence, and by that time, the Government will have disclosed the grand jury testimony, if any, describing Naasón's abuse of Victim-7 in its 18 U.S.C. § 3500 productions. Naasón has not articulated why his venue arguments entitle him to grand jury materials any earlier than that.

### c. Naasón's Racketeering Enterprise Arguments Do Not Outweigh the Need for Grand Jury Secrecy

Naasón's argument that he needs the grand jury materials to move to dismiss Count One of the Indictment on the argument that it fails to properly allege a racketeering enterprise is groundless. (*See* Dkt. 51, at 21-24).

As an initial matter, Naasón's motion to dismiss the Indictment on this theory, too, is destined to fail, and unsealing the grand jury materials is not going to change that. *See Proctor & Gamble, Co.*, 356 U.S. at 682. Count One "track[s] the language of the statute charged," that is,

11

18 U.S.C. § 1962(d), "and state[s] the time and place (in approximate terms) of the alleged crime." *Dawkins*, 999 F.3d at 779. If anything, although it stops far short of a complete statement of the Government's evidence, Count One goes beyond the standard pleading requirements by specifically defining the charged Joaquín LLDM Enterprise and its members (Dkt. 4 ¶¶ 15-22), describing the purposes of the Enterprise (Dkt. 4 ¶ 23), explaining the means and methods the Enterprise used to achieve those purposes (Dkt. 4 ¶ 24), and listing the predicate offenses that the Enterprise conspired to commit (Dkt. 4 ¶¶ 25-26). Grand jury materials cannot help Naasón justify dismissing Count One in the face of those allegations. *See, e.g.*, *United States v. Raniere*, 384 F. Supp. 3d 282, 300 (E.D.N.Y. 2019) ("RICO conspiracy indictments satisfy Rule 7(c) if they identify an enterprise, name the defendant as someone associated with that enterprise, allege that the defendant conspired to violate RICO, specify the time period during which the conspiracy operated, list specific types of predicate crimes allegedly committed, and discuss in detail the means and methods of the conspiracy.").

Naasón again makes no claim of government misconduct with respect to the definition of the Joaquín LLDM Enterprise. *See Leung*, 40 F.3d at 581. He resorts instead to mischaracterizing the Indictment, suggesting that the charged enterprise is "the entire [LLDM] Church," and previewing his trial defenses based on that mistaken premise. (Dkt. 51, at 22-24). Naasón's description of the charged Enterprise is wrong. The Indictment alleges that the Joaquín LLDM Enterprise consisted not of the entire Church but of a corrupt subset within the LLDM Church leadership, including Naasón, Eva, and Joram, who victimized and exploited—not conspired with—many adult and child members of the Church. (*See, e.g.*, Dkt. 4 ¶ 1 (the Joaquín LLDM Enterprise "abus[ed] generations of Church members" and "used the LLDM Church as a vehicle to commit" crimes)).

12

But even if Naasón's description of the Enterprise were correct, he does not need grand jury transcripts to move to dismiss Count One. The Court will not be adjudicating Naasón's defenses or "weigh[ing] whether [the Indictment's] factual allegations … [a]re consistent with the charged violations" at this stage. *Dawkins*, 999 F.3d at 780. Those are tasks for the jury at trial. *Sampson*, 898 F.3d at 280-81. The Court's role on a motion to dismiss will be to ensure that the Indictment on its face reflects that the Grand Jury found probable cause to believe that Naasón, Eva, and Joram committed crimes and charged them appropriately. Naasón has adduced no evidence (and there is none) to suggest that the extraordinary act of unsealing the grand jury materials on the enterprise issue will help the Court in that analysis.

### d. Naasón's Speculation About Post-Indictment Subpoenas Does Not Outweigh the Need for Grand Jury Secrecy

Naasón's final argument that the issuance of post-Indictment grand jury subpoenas triggers the disclosure of the transcripts and exhibits of every grand jury proceeding is equally meritless. (*See* Dkt. 51, at 24-26).

Naasón's claim that the post-Indictment subpoenas in this case must have been issued for improper trial-preparation purposes is pure speculation based solely on the fact that the subpoenas were issued after the Indictment. That sequence of events, standing alone, cannot rebut the presumption of regularity. *See Leung*, 40 F.3d at 581. There is nothing unusual or improper about a grand jury, after returning an indictment, continuing to issue process "to identify or investigate other individuals involved in criminal schemes or to prepare superseding indictments against persons already charged." *United States v. Jones*, 129 F.3d 718, 723 (2d Cir. 1997).

Naasón implies that the Grand Jury has been issuing subpoenas to Geoffrey Neri's clients for "the past nine months" (Dkt. 51-1 ¶ 2), suggesting that reveals an improper motive behind the subpoenas. But in reality, Mr. Neri's clients were served with subpoenas between September 10

13

and November 17, 2025, and those subpoenas were returnable between October 2 and December 4, 2025. That is all within about three months after the Grand Jury returned the Indictment on September 2, 2025, before a trial date in this matter had even been selected, and long before any trial preparations would begin. That timeline does nothing to rebut the presumption of regularity.[5]

Naasón's demand for grand jury materials on this basis also lacks appropriate particularity and tailoring. *See Ulbricht*, 858 F.3d at 107. Naasón simply asserts without explanation that the issuance of allegedly improper *post*-Indictment subpoenas justifies the disclosure of the transcripts and exhibits of all the *pre*-Indictment grand jury proceedings in this case. That is illogical. Even in the rare instances when a court has found that post-indictment grand jury subpoenas were issued for improper purposes, that has never justified the disclosure of all transcripts of all proceedings that preceded, and were by definition independent of, the improper subpoenas. Naasón has not cited any case that has contemplated, much less granted, that unusual relief. *See, e.g.*, *Simels*, 767 F.2d at 30 (surveying the potential remedies for violations of "the rule barring use of the grand jury … to prepare for trial," from "a simple rebuke" to "quashing" the subpoenas, none of which is unsealing the transcripts of grand jury proceedings that preceded the improper subpoenas).

---

[5] The cases Naasón cites demonstrate the weakness of his claim of impropriety here. In *United States v. Raphael*, 786 F. Supp. 355 (S.D.N.Y. 1992), the district court had "serious questions" about grand jury subpoenas that were issued during the Christmas holidays, six months after two incomplete trials and shortly before a second retrial of a defendant, to witnesses who the defendant had called at one of the prior trials and expected to call again at the upcoming retrial, and potentially for the express purpose of bolstering the credibility of a key government witness. *Id.* at 359 & n.3. In *In re Grand Jury Subpoena Duces Tecum Dated Jan. 2, 1985 (Simels)*, 767 F.2d 26 (2d Cir. 1985), the Court of Appeals quashed a grand jury subpoena that was issued to a witness who had previously received a trial subpoena seeking the exact same information. *Id.* at 28-30. Nothing of that sort is present here.

**2. Joram's Reliance on the Religious Freedom and Restoration Act of 1993 Does Not Outweigh the Need for Grand Jury Secrecy**

Joram largely adopts Naasón's arguments, with one variation: He claims that his anticipated motion to dismiss Count One of the Indictment based on the Religious Freedom and Restoration Act of 1993 (the "RFRA"), 42 U.S.C. §§ 2000bb, *et seq.*, like Naasón's anticipated dismissal motion based on the Free Exercise Clause, is a compelling reason to overcome grand jury secrecy. (*See* Dkt. 52, at 2-4). For substantially the same reasons that Naasón's arguments on this point fail, Joram's anticipated RFRA claim fails to justify the disclosure of grand jury materials. Joram's interpretation of the RFRA to require the dismissal of Count One is legally wrong and cannot create a compelling need to unseal grand jury transcripts. *See, e.g.*, *United States v. Williams*, 701 F. Supp. 3d 258, 273-74 (S.D.N.Y. 2023) (the RFRA does not impact federal criminal laws that are "sufficiently justified and narrowly tailored," such as those involving "force, threats of force, and obstruction" (collecting cases)).[6] In any event, Joram can make his RFRA-based motion to dismiss without the sealed grand jury materials because the Indictment explicitly describes the criminal conduct that Joram says the RFRA protects. (*See, e.g.*, Dkt. 4 ¶¶ 14, 24(k)). Joram makes no specific claim of government misconduct in the grand jury that could justify unsealing grand jury materials. *See Leung*, 40 F.3d at 581.

**3. Eva Has Forfeited Any Further Arguments**

Eva adopts Naasón's and Joram's motions in full and raises no unique arguments. (*See* Dkt. 53). Eva "reserves the right to file a reply memorandum in response to the [G]overnment's

---

[6] *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006), does not help Joram. That case addressed the application of a completely different federal criminal law (the Controlled Substances Act) to completely different conduct (the use of a hallucinogenic sacramental tea by a religious sect from the Amazon Rainforest).

opposition" to Naasón's and Joram's motions. (*See* Dkt. 53, at 1). If Eva files a reply brief, any new arguments she raises beyond those already raised by Naasón and Joram should be deemed forfeited. *See, e.g.*, *United States v. Green*, 2023 WL 7180645, at *2 (2d Cir. Nov. 1, 2023) (summary order) (arguments raised for the first time in reply are forfeited).

## CONCLUSION

The defendants' motions should be denied.

DATED:       New York, New York
             May 8, 2026

                                        Respectfully submitted,

                                        JAY CLAYTON
                                        United States Attorney

                              By:__/s/_____
                                        Ryan W. Allison
                                        Lisa Daniels
                                        Elizabeth A. Espinosa
                                        Michael R. Herman
                                        Assistant United States Attorneys
                                        (212) 637-2200

16