UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>-against-<br><br>NAASÓN JOAQUÍN GARCÍA,<br>EVA GARCÍA DE JOAQUÍN,<br>JORAM NÚÑEZ JOAQUÍN, et al.,<br><br>Defendants. | 25-CR-370 (LAP)<br><br><u>MEMORANDUM AND ORDER</u> |

LORETTA A. PRESKA, Senior United States District Judge:

On October 27, 2026, the Court denied the pretrial motions of Defendants Naasón Joaquín García ("García"), Eva García de Joaquín ("García de Joaquín"), and Joram Núñez Joaquín ("Núñez Joaquín"). This Memorandum and Order supplements the Court's oral rulings and memorializes the legal authorities on which the Court relies.[1]

## I. Free Exercise Challenges

At oral argument and in their papers, Defendants argued that the Indictment's sex trafficking allegations rest on what they term "spiritual coercion" and would require the jury to pass on the truth or falsity of Defendants' religious beliefs. They contend that the Indictment therefore violates the First

[1] As the Court observed at oral argument, Defendants lodged a veritable kitchen sink of arguments to dismiss the Indictment. The Court's written decision does not address every argument that the Court rejected at the October 27 conference. Rather, the Court focuses primarily on Defendants' statutory and constitutional arguments to aid the parties in preparing jury instructions.

Amendment's Free Exercise Clause and must be dismissed. See United States v. Ballard, 322 U.S. 78, 86–88 (1944); Gaddy v. Corp. of the President of the Church of Jesus Christ of Latter-Day Saints, 148 F.4th 1202, 1214 (10th Cir. 2025), cert. denied, 146 S. Ct. 1786, 224 L. Ed. 2d 163 (2026) ("The truth or falsity of religious doctrine or beliefs is beyond the proper purview of secular courts and juries.")

The key statute at issue in this case, 18 U.S.C. § 1591, prohibits sex trafficking accomplished by force, threats of force, fraud, or coercion. See 18 U.S.C. § 1591(a). "Coercion," to that end, includes "threats of serious harm to or physical restraint against any person" and "any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person." Id. § 1591(e)(2)(A)-(B). "Serious harm," in turn, extends to "any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing commercial sexual activity in order to avoid incurring that harm." Id. § 1591(e)(5).

Here, to the extent that the Government proceeds on a theory of coercion[2] under § 1591, such a theory does not require the jury to pass on the truth or falsity of the LLDM Church's religious teachings. Rather, the serious-harm inquiry asks whether the threatened harm would have compelled a reasonable person of the victim's background and in the victim's circumstances—i.e., one raised in the LLDM Church who believed its teachings—to engage in commercial sex acts. See United States v. Rivera, 799 F.3d 180, 186–87 (2d Cir. 2015) (the "hybrid" standard "permits the jury to consider the particular vulnerabilities of a person in the victim's position but also requires that her acquiescence be objectively reasonable under the circumstances"). Nothing in that inquiry requires the jury to determine whether those beliefs are in fact true. Indeed, the Government expressly disclaims any intention to prove that LLDM doctrine is false, (Gov't Opp. at 9), which moots Defendants' related concern that the jury will be required to determine the truth of LLDM religious tenets.

Núñez Joaquín separately contends that, as a matter of statutory construction, a threat of purely spiritual harm cannot constitute "serious harm" under § 1591. (Núñez Joaquín Mot. at

[2] The Court notes that coercion is not the only theory of sex trafficking presented in the Indictment, which also alleges force-based trafficking and, as to minor victims, trafficking under § 1591(b)(2) and (c), for which no showing of force, fraud, or coercion is required. See, e.g., Indictment ¶¶ 10 (alleging that García de Joaquín "held down a minor victim so that Samuel could rape the victim"); 24(c) (alleging that García, García de Joaquín, and others "used, and aided and abetted the use of, physical force to restrain and rape victims").

19-20.) The Court disagrees. "Serious harm" expressly includes "nonphysical" and "psychological" harm, 18 U.S.C. § 1591(e)(5), and the "scheme, plan, or pattern" prong asks what the defendant "intended to cause a person to believe," id. § 1591(e)(2)(B), not whether the defendant would or could actually inflict the threatened harm. In any event, the Indictment does not rest on threats of damnation alone. It also alleges that leaving the Church meant "the end of any relationship with family members or friends inside the LLDM Church," and that, on other occasions, García, García de Joaquín, and others used physical force to restrain and rape victims. (Indictment ¶¶ 7(e), 24(c).) Whether the threats alleged here, made in combination with the other conduct the Indictment describes, rose to the level of serious harm is a question for the jury on a full trial record. See Rivera, 799 F.3d at 186-87; United States v. Sampson, 898 F.3d 270, 281 (2d Cir. 2018).

Naturally, the Court will entertain requests for appropriate jury instructions to ensure the jury does not inappropriately consider the veracity of LLDM religious beliefs and encourages the parties to confer accordingly.

## II. Religious Freedom Restoration Act

Separate from the Free Exercise Clause, Defendants also moved to dismiss the Indictment under the Religious Freedom Restoration Act ("RFRA"). (García Mot. at 30-32.) RFRA provides that the

Government "shall not substantially burden a person's exercise of religion" unless it "demonstrates that application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(a)-(b).

As the Court noted at oral argument, Defendants bear the burden to establish a "substantial burden" under RFRA. See Jolly v. Coughlin, 76 F.3d 468, 477 (2d Cir. 1996), abrogated on other grounds by City of Boerne v. Flores, 521 U.S. 507 (1997). A substantial burden under RFRA exists where the government "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." Id. (quoting Thomas v. Review Bd. of Ind. Emp. Sec. Div., 450 U.S. 707, 718 (1981)).

Here, the Court concludes that compliance with federal sex-trafficking statutes does not substantially burden Defendants' religious practice. There is no indication that Defendants must threaten or coerce victims into sex acts, as alleged in the Indictment, in order to practice their religion or to serve as spiritual leaders. Section 1591 does not prohibit preaching or the teaching of religious doctrine. And even if the federal laws at issue did substantially burden Defendants' religious practice, the Government doubtless has a compelling interest in preventing sex trafficking, whether of children or of adults. See United

States v. Raniere, 55 F.4th 354, 360 (2d Cir. 2022) (the Trafficking Victims Protection Act was enacted "to combat trafficking in persons, a contemporary manifestation of slavery whose victims are predominantly women and children" (quoting 22 U.S.C. § 7101(a) (2000))); cf. New York v. Ferber, 458 U.S. 747, 757 (1982) ("The prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance."). As applied to Defendants, § 1591, which reaches only the knowing use of force, fraud, or coercion to cause commercial sex acts, is also the least restrictive means of furthering that compelling interest. See Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal, 546 U.S. 418, 430-31 (2006) (RFRA requires the Government to satisfy the compelling-interest test "through application of the challenged law 'to the person'" who alleges his or her exercise of religion is substantially burdened). Accordingly, Defendants' RFRA arguments are without merit.

**III. Extraterritoriality and Ex Post Facto Arguments**

García de Joaquín also moves to dismiss, strike, or narrow Count One to the extent it relies on foreign predicate conduct not indictable when it occurred and to preclude any retroactive use of the extraterritorial jurisdiction over trafficking and forced-labor offenses that Congress created in 2008. See 18 U.S.C. § 1596; Pub. L. No. 110-457, § 223(a), 122 Stat. 5044, 5071 (2008).

RICO, of course, reaches foreign racketeering activity "only to the extent that the predicates alleged in a particular case themselves apply extraterritorially." RJR Nabisco v. European Cmty., 579 U.S. 325, 339 (2016). "If a particular statute does not apply extraterritorially, then conduct committed abroad is not 'indictable' under that statute and so cannot qualify as a predicate under RICO's plain terms." Id. A RICO conspirator, however, need not commit, or agree to commit, any predicate act personally. See Salinas v. United States, 522 U.S. 52, 63-65 (1997); see also United States v. Yannotti, 541 F.3d 112, 122 (2d Cir. 2008) (explaining that a RICO conspirator "need only know of, and agree to, the general criminal objective of a jointly undertaken scheme"). On the contrary, "RICO conspiracy is . . . a crime that can be committed simply by sitting around a table and agreeing with other individuals to create an organization . . . that would engage in criminal acts . . . whether or not the organization ever gets off the ground and whether or not the defendant, or any of his co-conspirators, ever commits any of the anticipated crimes." United States v. Capers, 20 F.4th 105, 118 (2d Cir. 2021). Thus, in contrast to conspiracies charged under § 371, "a RICO conspiracy does not even require that any of the conspirators commit even a single overt act toward the commission of such crimes." Id.

With respect to § 1596, Defendants are correct that Congress's extraterritorial grant of jurisdiction cannot reach foreign conduct wholly completed before the statute's enactment on December 23, 2008. But application of the statute to a criminal scheme that continued after the statute's effective date does not violate the Ex Post Facto Clause, so long as the jury, properly instructed, cannot convict exclusively on pre-enactment conduct. United States v. Monaco, 194 F.3d 381, 386 (2d Cir. 1999) (explaining that a conviction for "a continuing offense straddling enactment of a statute" violates the Ex Post Facto Clause only if "it was possible for the jury, following the court's instructions, to convict 'exclusively' on pre-enactment conduct" (quoting United States v. Harris, 79 F.3d 223, 229 (2d Cir. 1996))).

Here, Count One charges García de Joaquín with a single continuing racketeering conspiracy that extended through August 2025. (Indictment ¶ 25.) It alleges domestic racketeering activity, including the harboring of victims in Los Angeles and their transport to destinations within the United States. (Id. ¶¶ 24(b), (d).) The Notice of Special Sentencing Factors also alleges domestic, post-2008 trafficking that names García de Joaquín, such as the April 2017 trafficking of Victim-6 in the Central District of California. (Id. ¶ 28.) Because the Indictment alleges an agreement to commit both domestic and post-

2008 racketeering acts (none of which García de Joaquín need have committed personally), Count One must survive at this stage.

## CONCLUSION

For the reasons stated on the record at the October 27, 2026 conference and above, Defendants' motions (Dkts. 59, 60, 63) are DENIED. The Clerk of the Court shall close Dkts. 59, 60, and 63.

**SO ORDERED.**

Dated: New York, New York
November 13, 2026

Loretta A. Preska

LORETTA A. PRESKA
Senior United States District Judge